HAZEN FIRST STATE BANK, Appellant,

v.

Phillip SPEIGHT, Small Business Administration, Appellee.

No. 89–1675.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 26, 1989.

Decided Nov. 1, 1989.

Stephen L. Gershner, Little Rock, Ark., for appellant.

Bill Adair, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

LAY, Chief Judge.

Hazen First State Bank (Bank) appeals from an order of the district court[1] denying their motion for summary judgment and granting the Small Business Administration's (SBA) motion for summary judgment on the Bank's claim for priority status as to the proceeds of the sale of certain farm machinery formerly owned by Phillip Speight. We affirm.

## I. Background

This dispute is between two creditors over which party has first priority to the proceeds of collateral where both had a perfected security interest. In order to secure a promissory note received from Speight, SBA took a security interest in "[a]ll equipment and machinery * * * now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use and connection therewith." This security interest was properly perfected on April 28, 1981, and then continued on March 24, 1986.

On February 13, 1986, Speight gave the Bank a security interest in the same machinery in which SBA had previously perfected its security interest. The Bank perfected its security interest on February 25, 1986. Prior to this, on February 6, 1986, the Bank received from SBA an agreement which subordinated SBA's lien in the machinery to that of the Bank's. The agreement stated:

> This action [is] to subordinate the position of the Small Business Administration to Hazen First State Bank for 1986 crop loan in the amount of $65,000. This subordination is to expire March 1, 1987. Any extensions must have concurrence of SBA.

> This subordination is subject to receipt of 1986 loan payment or evidence that it has been made in the amount of $7,900.00.

The Bank thereafter advanced the $7,900.00 payment to SBA.

On February 24, 1987, Speight filed a Chapter 7 bankruptcy petition. Thereafter, the parties engaged in this dispute over who had priority to the collateral. By order of the bankruptcy court, dated October 9, 1987, the automatic stay provision of 11 U.S.C. § 362(a) (1988)[2] was relaxed and, by agreement of the parties, the collateral was sold with the proceeds of $46,398.16 being placed in escrow until the completion of this litigation resolving the priority issues. Both the Bank and SBA made motions for summary judgment.

The Bank claims that but for the debtor's filing of the bankruptcy petition on February 24, 1987, it could have filed suit against Speight and SBA anytime prior to March 1, 1987, and frozen the priority status of the

---

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

2. That section provides in pertinent part:
    (a) * * * [A] petition filed under * * * this title * * * operates as a stay, applicable to all entities, of—
    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
    * * * *
    (4) any act to create, perfect, or enforce any lien against property of the estate;
    (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]
    11 U.S.C. § 362(a).

parties as agreed to in the subordination agreement. The Bank claims that they were prevented from doing so because of the automatic stay provided for by section 362(a). The Bank argues, however, that 11 U.S.C. § 108(c) (1988), extends the expiration date set forth in the agreement thus maintaining the Bank's lien priority over SBA.[3] The Bank also contends that the express terms of the agreement are unclear and ambiguous and the court should have considered usage of trade in interpreting the meaning of "subordination."

SBA contends that the automatic stay of section 362(a) did not prevent the agreement from expiring by its own terms on March 1, 1987 and, further, that section 108(c) did not extend the expiration date of the agreement so that once it expired SBA had priority over the Bank. SBA argues that the express terms of the agreement are clear and unambiguous and that no evidence of usage of trade should have been considered in interpreting the agreement.

The district court held that the automatic stay provided for in section 362(a) was not intended to toll the deadlines provided for in a contract between two creditors. Further, that section 108(c) was inapplicable to the parties' subordination agreement and, therefore, section 108(c) would not extend the expiration date provided for in the agreement. Finally, the district court held that the express terms of the agreement were clear and unambiguous and, therefore, the court would not consider usage of trade that was inconsistent with the express terms of the agreement. As a result, the district court found that SBA's lien had priority over the Bank's and as there was no genuine issue of material fact, found that SBA was entitled to judgment as a matter of law. The Bank appealed.

**3.** That section provides:

(c) * * * [I]f applicable non bankruptcy law * * * or *an agreement fixes a period for commencing or continuing a civil action* in a court other than a bankruptcy court on a claim against the debtor * * * and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 * * * of this title * * * with respect to such claim.

11 U.S.C. § 108 (emphasis added).

## II. Discussion

### A. Section 362(a)

We first consider what effect the automatic stay provision of section 362(a) had on the subordination agreement. The district court found that the automatic stay had no effect on the expiration of the agreement because the agreement expired under its own terms and the automatic stay does not toll the running of a specific time period in a contract. We agree.

■■■ The automatic stay provided for by section 362(a) does not enlarge the rights of individuals under a contract nor does it toll the running of time under a contract. It will not prevent the automatic termination of a contract by its own terms. *See, e.g., Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Beverages Int'l Ltd.,* 61 B.R. 966, 972 (Bankr.D.Mass.1986); *In re Heaven Sent Ltd.,* 37 B.R. 597, 597–98 (Bankr.E. D.Penn.1984). Under the terms of the agreement, the expiration date was March 1, 1987. No act on the part of anyone was required in order for the agreement to expire. The expiration does not fall within the automatic stay provision of section 362(a).[4]

### B. Section 108(c)

■■■ The Bank contends that section 108(c) protected their rights under the agreement by extending the expiration date. Where a creditor is stayed from commencing or continuing an action against a debtor in bankruptcy, section 108(c) gives the creditor an additional 30 days to enforce its claim against the debtor once the creditor receives notice of the termination of the stay. Essentially, the Bank's claim

**4.** We recognize that the cited cases deal with contractual rights between a debtor and its creditors but believe their reasoning is even more persuasive where the debtor is not a party to the contract at all. The purpose of the automatic stay of section 362(a) is to give the debtor a breathing spell from creditors, and to prevent creditors from rushing in to enforce their liens to the detriment of other creditors. *In re Ahlers,* 794 F.2d 388, 393 (8th Cir.1986), *rev'd on other grounds sub nom. Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). This policy is not forwarded by applying it to a contract between two creditors. The priority of the creditors has no effect on the debtor or the amount of secured debt.

is that section 362(a) prevented it from enforcing the agreement and now, section 108(c), extends the expiration date of the agreement to provide a 30 day "window" in which the Bank's lien is prior to SBA's.

The Bank cites two cases in support of its argument. In *In re Hunters Run Ltd. Partnership*, 875 F.2d 1425 (9th Cir.1989), the court held that the statutory enforcement period of Washington's mechanic's lien was tolled by section 108(c) because the mechanic's lien code section, Wash.Rev. Code § 60.04.100, was an " 'applicable nonbankruptcy law' that 'fixes a period for commencing a civil action in a court other than a bankruptcy court on a claim against the debtor.' " *Id.* at 1427. The court held that although the eight-month enforcement period of section 60.04.100 had run, the creditor was not barred from pursuing his claim because the period had been tolled by section 108(c).

In *In re Morton*, 866 F.2d 561 (2d Cir. 1989), the court held that "the tolling provisions of § 108(c) apply to New York's ten-year period governing judgment liens on real property." *Id.* at 566. Like the *Hunters Run* court, this court found that the applicable New York statute, N.Y.Civ. Prac.L. & R. § 5203 (McKinney 1988), fixed a period of ten years in which to enforce a judgment lien on real property. The creditor bank was allowed to enforce its judgment lien even though the ten-year enforcement period had run.

■ The Bank attempts to analogize the expiration date contained in their agreement with SBA to the statutory enforcement provisions cited above. They claim the only way they could have enforced their lien, and maintained their priority as provided for by the agreement, was to file suit before March 1, 1987. The Bank argues that this contractual requirement is the same as the statutory limitation periods in the cases cited above and, therefore, the expiration date of the agreement should be extended just as the *Hunters Run* and *Morton* courts extended the eight-month and ten-year enforcement provisions. We disagree.

Even if the only way the Bank could have protected its priority status under the terms of agreement was to file suit prior to March 1, 1987, this fact does not make the agreement one which comes under the provisions of section 108(c) which "fixes a period for commencing a civil action in a court other than a bankruptcy court on a claim against the debtor." As the district court noted, section 108(c) "has no application to an agreement fixing the time to maintain the Bank's lien priority pursuant to an agreement between the Bank and the SBA." Although the effect of the agreement may have incidentally fixed the time period in which the Bank was required to act in order to preserve its priority status, the agreement falls outside the protection offered by section 108(c). *See In re Vassilowitch*, 72 B.R. 803, 806–07 (Bankr.D. Mass.1987).

The cases holding that section 108(c) tolls the expiration of a creditor's lien deal with the complete loss of a creditor's right to enforce a lien, while this case deals merely with the loss of a creditor's priority status. The Bank argues that this "is not a basis for distinction." We disagree. The purpose of section 108(c) is to prevent a debtor from taking advantage of the bankruptcy scheme by filing for bankruptcy and then waiting for the statute of limitations to run on the creditor's claim. *See In re Morton*, 866 F.2d at 566. That purpose is not forwarded by the application of section 108(c) to this case. No facts have been offered to this court to suggest that Speight was attempting to avoid any of his creditor's liens. Even if he had attempted to do so no such result would have occurred. Both SBA and the Bank have perfected security interests, neither of which are subject to expiration due to the statute of limitations. Although we recognize the Bank's argument, that where there are insufficient proceeds to cover the full amount of a debtor's debt, the loss of a creditor's priority is the equivalent to the complete loss of the lien, that fact alone is not enough to alter the proper statutory interpretation of section 108(c). If the Bank is to suffer a loss, it is because of the agreement in which they voluntarily entered and to which we now turn.

## C. Ambiguity

■ The agreement stated that the "subordination is to expire March 1, 1987." The Bank claims that this language was intended to mean that the subordination would continue until the entire loan amount of $65,000.00 was repaid, and that the expira-

tion date set forth in the agreement was merely intended to require the Bank to have advanced all funds to the debtor by March 1, 1987. They claim that the interpretation offered by the district court and by SBA, would have required the Bank to have satisfied the loan from less than all of the 1986 crop proceeds because payments to farmers under the ASCS program are not all made prior to March 1. On this basis the Bank argues that there is a genuine issue of material fact as to the meaning of subordination as used in the agreement. We disagree.

The Bank cites to the UCC's definition of "agreement" for the proposition that in construing a contract a court should look not only to the express terms of an agreement but also to usage of trade or course of performance. The Arkansas UCC defines agreement as:

> [T]he bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance * * *.

Ark.Stat.Ann. 4–1–201(3) (1987). The district court, however, correctly noted Ark. Stat.Ann. § 4–1–205(4) (1987) which reads:

> The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

*Id.*

The district court found that the express terms of the agreement were clear and unambiguous and "to construe the agreement in accordance with the usage of trade would be inconsistent with the express terms, and the express terms should therefore control." The affidavits submitted by the Bank establish that the practice in some subordination agreements has been to set the duration of the subordination equal to the time in which it takes for the loan to be repaid. If the parties had intended for the subordination to continue until the loan was repaid, we conclude they would have included that language in the agreement as other parties have done. We find the examples of usage of trade to be inconsistent with the express terms of the agreement and to have been properly rejected.

### D. Conclusion

We hold that the district court correctly found that the automatic stay of section 362(a) does not affect the expiration date of a subordination agreement between two creditors and that section 108(c) does not extend the expiration date of the parties' subordination agreement. Further, we find the express terms of the agreement are clear and unambiguous and that the district court was correct in refusing to consider usage of trade in its interpretation of the agreement. Once the agreement expired, SBA had priority. Therefore, because the record shows no factual basis under which the bank would prevail on this issue, we find there is no genuine issue of material fact and SBA is entitled to judgment as a matter of law. *See Realex Chem. Corp. v. S.C. Johnson & Son, Inc.,* 849 F.2d 299, 302 (8th Cir.1988).

The order of the district court is affirmed.