IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 98-10702
_____

HERBERT R GRAFF; CARL W MANGUS; STEVE FEDORKO; ED J
PAYNE; LARRY FLOOD; VINCE SCARICH; OTTO NASS,

Plaintiffs-Appellees,

v.

DONALD L FIELD, JR,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

August 19, 1999

Before KING, Chief Judge, and REYNALDO G. GARZA and JOLLY,
Circuit Judges.

KING, Chief Judge:[*]

Defendant-appellant Donald Field, Jr. appeals an adverse
judgment following a jury verdict in favor of plaintiffs-
appellees on their state-law claims that he fraudulently sold
them securities in an oil-drilling concern. Field argues that
the district court erroneously denied him summary judgment on
plaintiffs-appellees' federal securities claims and improperly
maintained supplemental jurisdiction over plaintiffs-appellees'
state-law claims. Field also contends that there is insufficient

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

evidence to support the jury's findings that Field committed common-law fraud. We affirm the judgment.

## I. FACTUAL BACKGROUND

This case arises from the sale of securities issued by Tekna Synergy Corporation (Tekna) between January and September 1992. Tekna obtained approximately $1.5 million through the sale of securities to investors, including over $750,000 from plaintiffs-appellees (plaintiffs), and represented that the proceeds would be used to drill both horizontal and vertical shafts for three oil wells. Tekna did not disclose, however, that other oil companies had already drilled and abandoned vertical shafts for these wells, and that therefore Tekna did not need to perform vertical drilling.

Defendant-appellant Donald Field, Jr. is a licensed attorney who incorporated Tekna and served as a director and its president through September 1992. Field acted as the chief executive officer and supervised and controlled the business affairs of Tekna. Field stipulated that he assisted outside attorneys in preparing the prospectuses that were delivered to plaintiffs and other potential investors, and he testified that he reviewed the prospectuses prior to their distribution and "was satisfied with the language of what they put together." These prospectuses falsely represented that Tekna would spend approximately $1.4 million for the vertical drilling of the three wells.

The Securities and Exchange Commission (the SEC) brought suit against Tekna in the United States District Court for the

2

Northern District of Texas in 1993 (the SEC action).  The SEC sought an injunction preventing Tekna from violating federal securities laws in connection with the sale of securities in the form of fractional undivided interests in oil and gas wells or investment contracts.  The SEC action was assigned to United States District Judge John McBryde, and the district court issued an injunction and ultimately entered judgment in favor of the SEC based on consent decrees entered by the parties.

## II. PROCEDURAL HISTORY

Plaintiffs filed suit against Tekna's officers, including Field, in the United States District Court for the Northern District of Texas in October 1993 (the 1993 action).  Plaintiffs alleged that Tekna and its officers had made fraudulent misrepresentations in the sale of Tekna securities in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5;[1] the Texas Securities Act, TEX. BUS. & COM. CODE ANN. § 27.01; and the

---

[1] Section 78j provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.  Under SEC Rule 10b-5, it is unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5 (1998).

3

Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41-.63. Further, plaintiffs alleged that Tekna and its officers had engaged in common-law fraud and breached fiduciary duties they owed plaintiffs by selling them Tekna securities. The 1993 action was also assigned to Judge McBryde, and trial was scheduled to commence on April 24, 1995.

On March 31, 1995, Field filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. See 11 U.S.C. § 1301-1330. The district court ordered that plaintiffs decide whether to (1) seek to lift the automatic stay and proceed against Field in the 1993 action or (2) dismiss Field from the 1993 action and pursue their claims against him in bankruptcy court. On April 21, 1995, plaintiffs moved to dismiss Field from the 1993 action and stated an intent to pursue their claims in the bankruptcy court. The district court dismissed plaintiff's claims against Field without prejudice on April 24, 1995. Plaintiffs prevailed at trial against the remaining Tekna officers and ultimately obtained a judgment against them.

Field filed an application to dismiss his bankruptcy case on November 6, 1996. The bankruptcy court granted the application the following day, and on November 14, 1996, the clerk of the bankruptcy court issued notice that Field's bankruptcy case had been dismissed. Plaintiffs filed the instant suit on January 7, 1997, again alleging that Field violated federal securities laws, the Texas Securities Act, and the Texas Deceptive Trade

4

Practices-Consumer Protection Act, and engaged in common-law fraud in the sale of Tekna securities to plaintiffs.

Field filed a motion for summary judgment on plaintiffs' federal securities claims and for dismissal of plaintiffs' state-law claims on February 10, 1997. Field asserted that he was entitled to summary judgment under 15 U.S.C. § 78i(e)[2] because more than three years had elapsed since the alleged violation and that therefore plaintiffs could not proceed on their federal claims. Field further argued that plaintiffs' state-law claims must be dismissed because supplemental jurisdiction under 28 U.S.C. § 1367©[3] would no longer be appropriate once summary judgment was entered. Plaintiffs opposed Field's motion for summary judgment, arguing that the dismissal of Field's bankruptcy case restored the status quo ante as though Field's bankruptcy petition had never been filed and that it would be

---

[2] Section 78i(e) provides that "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation."

[3] Section 1367(c) provides that a district court

may decline to exercise supplemental jurisdiction over a claim . . . if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

5

inequitable for Field to benefit under the statute of limitations as a result of his "manipulation" of the bankruptcy process.

The district court denied Field's summary judgment motion without explanation on March 5, 1997. The case proceeded to trial, which was scheduled for July 14, 1997. On July 9, 1997, plaintiffs filed a motion to abandon and dismiss their federal securities claims against Field, leaving only state-law claims for trial. The district court granted the motion, and the jury returned a verdict in favor of plaintiffs on their claims under both the Texas Securities Act and common-law fraud. Field sought judgment as a matter of law, arguing that the district court lacked subject matter jurisdiction because plaintiffs' federal securities claims were barred by the statute of limitations and that the jury's findings on common-law fraud were based on insufficient evidence.

The district court entered judgment against Field for approximately $3.8 million based on plaintiffs' fraud cause of action on June 4, 1998. The court stated that it "had no reason to change" its March 1997 ruling on the statute of limitations issue, and that otherwise "Field would have been permitted to manipulate the bankruptcy laws in a highly inappropriate manner to defeat claims against him." The court stated that its conclusion was not based on equitable tolling, but rather on its view that "plaintiffs' action against defendant was actually filed . . . in October 1993 when plaintiffs filed their initial suit." The district court further determined that sufficient

6

evidence was presented to support the jury's verdict on common-law fraud.  Field timely appeals.

### III. DISCUSSION

Field argues again in this appeal that the district court erred by denying his motion for summary judgment on plaintiffs' federal securities claims because those claims were barred by the statute of limitations.  Field asserts that plaintiffs' federal claims were "clearly barred by [the] Supreme Court opinion" in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991) [hereinafter Lampf], and that therefore the district court "had no discretion to retain" plaintiffs' state-law claims. Further, even if the district court did have discretion to retain plaintiffs' state-law claims, Field argues that its retention of these claims constituted an abuse of discretion because his motion for summary judgment "was filed at the very outset of the litigation."  Finally, Field contends that the district court erroneously denied him judgment as a matter of law because "[t]here is no more than a scintilla of evidence in the record to support the jury's verdict" on plaintiffs' common-law fraud claims.  We address these arguments in turn.

### A. Statute of Limitations

We review de novo the district court's decision denying Field summary judgment on his claim that plaintiffs' federal claims are time-barred.  See Texas Manufactured Housing Ass'n v. City of Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996).  Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We note, however, that the statute of limitations issue that we now consider is relevant only because Field argues that the district court erroneously retained supplemental jurisdiction over plaintiffs' state-law claims--plaintiffs voluntarily dismissed the federal securities claims that Field argues are time-barred and the judgment appealed from is based only on the jury's verdict that Field engaged in common-law fraud.

The limitations period for plaintiffs' claims under § 10(b) of the Securities Exchange Act and SEC Rule 10b-5 is that prescribed in 15 U.S.C. § 78i(e)--one year from the date of discovery of the facts constituting the alleged violation or three years from the date of the transaction. See Lampf, 501 U.S. at 364. It is undisputed that the transactions at issue here occurred no later than September 1992, but plaintiffs did not file the instant suit until January 1997. Furthermore, "[b]ecause the purpose of the 3-year limitation is clearly to serve as a cutoff," plaintiffs' federal claims cannot be considered timely as a result of equitable tolling. Id. at 363 ("[I]t is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure."). Nor does plaintiffs' filing of the 1993 action operate to toll the limitations period with respect to Field because plaintiffs

voluntarily dismissed Field from that action in April 1995.  See

Basco v. American Gen. Ins. Co., 43 F.3d 964, 965-66 (5th Cir.

1994) ("A federal statute of limitations is not tolled when the

plaintiff files a claim that later is voluntarily dismissed.");

Taylor v. Bunge Corp., 775 F.2d 617, 619 (5th Cir. 1985); see

also 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE

§ 2367 (1995) ("The statute of limitations is not tolled by

bringing an action that later is dismissed voluntarily under

[Federal Rule of Civil Procedure] 41(a).").

Plaintiffs contend on appeal that the district court

properly denied Field summary judgment on their federal

securities claims under the doctrine of equitable estoppel and

that their claims are timely under 11 U.S.C. § 108(c).[4]

Plaintiffs argue that the Lampf decision prevents only the

equitable tolling of a claim under the discovery rule, and that

_____

[4] Section 108(c) provides that

[I]f applicable nonbankruptcy law . . . fixes a period for
commencing or continuing a civil action in a court other
than a bankruptcy court on a claim against the debtor, or
against an individual with respect to which such individual
is protected under section 1201 or 1301 of this title, and
such period has not expired before the date of the filing of
the petition, then such period does not expire until the
later of--
(1) the end of such period, including any suspension of such
period occurring on or after the commencement of the case;
or
(2) 30 days after notice of the termination or expiration of
the stay . . . with respect to such claim.

11 U.S.C. § 108(c).  Neither party argued, and the district court
did not mention, whether § 108(c) applies to plaintiffs' federal
securities claims until after the district court entered final
judgment, and the notice of appeal had been filed, in June 1998.

their federal claims should be considered timely under equitable estoppel because "it was [Field's] bankruptcy proceedings . . . which prevented [plaintiffs] from prosecuting the federal securities causes of action against him."  Plaintiffs further argue that their claims are timely under 11 U.S.C. § 108(c) because the limitations period is suspended during the pendency of a bankruptcy proceeding under Texas law and Field offered no evidence indicating that they received notice of the dismissal of his bankruptcy petition more than thirty days before filing the instant suit.

Even if plaintiffs are correct in their contention that equitable estoppel survives the Supreme Court's determination in Lampf that "tolling principles do not apply" to the limitations period for federal claims under § 10(b) of the Securities Exchange Act or SEC Rule 10b-5, we still must reject plaintiffs' argument that their claims are properly considered timely under the doctrine.  "Under the doctrine of equitable estoppel, a defendant is estopped from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass."  McAllister v. FDIC, 87 F.3d 762, 767 (5th Cir. 1996); see also Tregenza v. Great Am. Communications Co., 12 F.3d 717, 721 (7th Cir. 1993) (describing equitable estoppel as where "the plaintiff might have the required information--actual knowledge of the violation or inquiry notice, as the case may be--yet be thwarted from suing in time by misrepresentations or other actions by the defendant; for example, the defendant might

10

have promised not to plead the statute of limitations."). We fail to understand how Field's bankruptcy filing can be said to have induced plaintiffs into allowing the limitations period to run when plaintiffs had already filed suit against Field at the time he filed his bankruptcy petition. Furthermore, even if Field's bankruptcy petition did perform such a function, § 108(c) provides plaintiffs relief from such an inducement by allowing them an additional thirty days to file suit following the dismissal of the bankruptcy petition. See Hazen First State Bank v. Speight, 888 F.2d 574, 577 (8th Cir. 1989) ("The purpose of section 108(c) is to prevent a debtor from taking advantage of the bankruptcy scheme by filing for bankruptcy and then waiting for the statute of limitations to run on the creditor's claim.").

We also must reject plaintiffs' argument that their federal securities claims are timely under § 108(c). Plaintiffs waited almost two months after the clerk issued notice that Field's bankruptcy petition had been dismissed, and plaintiffs have offered no evidence suggesting the existence of a genuine issue of material fact, and have not even argued, that they filed this suit within thirty days of receiving such notice. Plaintiffs do argue that the term "any suspension" in § 108(c)(1) "include[s] a suspension granted by state law, whether it be by statutory or by common law," and that because Texas law provides for the tolling of limitations periods during bankruptcy, their federal securities claims should be similarly tolled under § 108(c)(1). Although it may be appropriate for a federal court to look to

11

state law in determining the impact of a bankruptcy proceeding on the limitations period for a state-law cause of action, see Pettibone Corp. v. Easley, 935 F.2d 120, 121 (7th Cir. 1991) (stating that "[f]ederal law assured the plaintiffs [in a personal injury action] 30 days in which to pick up the baton; if states want to give plaintiffs additional time [by tolling the statute of limitations during the bankruptcy proceeding], that is their business"), we must rely on federal law in determining the appropriate limitations period for plaintiffs' federal securities claims.  See Lampf, 501 U.S. at 359, 363.  We therefore conclude that plaintiffs' federal claims were time-barred and that the district court should have granted Field summary judgment on those claims.

B. Supplemental Jurisdiction

Our determination that the district court should have granted summary judgment on plaintiffs' federal securities claims, however, does not compel the conclusion that the district court erred by exercising supplemental jurisdiction over plaintiffs' state-law claims.  Rather, we review a district court's decision to exercise supplemental jurisdiction over pendent state-law claims for an abuse of discretion, standing in the place of the district court as of the filing of the motion to dismiss "and not with the benefit of hindsight."  Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585, 587 (5th Cir. 1992) (noting that "a court cannot obtain jurisdiction over a case merely by trying it").  "Our review is guided by the

12

relevant statutory provisions governing the exercise of supplemental jurisdiction, see 28 U.S.C. § 1367(c), as well as the Supreme Court's articulation of the scope and nature of district courts' discretion in exercising jurisdiction over pendent state law claims." McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998). We therefore consider both the provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity in determining whether the district court abused its discretion by retaining jurisdiction over plaintiffs' state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).

Field argues that the district court "had no discretion to retain" plaintiffs' state-law claims because the district court lacked subject matter jurisdiction over plaintiffs' federal securities claims. Field asserts that subject matter jurisdiction was lacking because plaintiffs' federal claims "were clearly barred" under Lampf and their "sole motivation in asserting violations of Rule 10b-5 . . . . [was to] obtain the benefit of [a] federal forum to try [their] state law causes of action." Field relies on several of our cases that are based on the Supreme Court's determination in Bell v. Hood, 327 U.S. 678, 682-83 (1946), that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely

13

for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." See also Parker & Parsley Petroleum, 972 F.2d at 585 n.6 ("We have held that the Hood standard is met only where the plaintiff's claim 'has no plausible foundation' or is clearly foreclosed by a prior Supreme Court decision.") (quoting Williamson v. Tucker, 645 F.2d 404, 416 (5th Cir. May 1981)). Plaintiffs' federal securities claims have not met this "onerous standard." Id. The Supreme Court did not consider in Lampf how the statute of limitations for a federal securities action is affected by a prior suit that was voluntarily dismissed when the defendant filed a bankruptcy petition, or by the bankruptcy proceeding itself. Furthermore, we cannot say that plaintiffs' argument regarding equitable estoppel is without a "plausible foundation" when the district court, without the benefit of the parties' arguments under 11 U.S.C. § 108(c), relied upon it and the Seventh Circuit has stated that "there may still be room" for such an argument after Lampf. Tregenza, 12 F.3d at 721.

Although we have expressed as a "general rule" that district courts should decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, "this rule is neither mandatory nor absolute." Batiste, 179 F.3d at 227; see Cohill, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will

14

point toward declining to exercise jurisdiction over the remaining state-law claims."). Thus, while the fact that the district court should have granted Field summary judgment on plaintiffs' federal securities claims "provides 'a powerful reason to choose not to continue to exercise jurisdiction,' no single factor is dispositive in this analysis." McClelland, 155 F.3d at 519 (quoting Cohill, 484 U.S. at 351). We therefore review the district court's decision denying Field's motion to dismiss plaintiffs' state-law claims "in light of the specific circumstances of the case at bar." Id.

We conclude that the factor of judicial economy weighs heavily in favor of the district court's decision to exercise jurisdiction over plaintiffs' state-law claims. The 1993 action, involving the same plaintiffs and the same claims, had been pending in the district court for a year and a half when the district court ordered them to either seek to have the automatic stay lifted or voluntarily dismiss Field from the suit on the eve of trial, and Field had participated in discovery and motion hearings before Judge McBryde and the preparation of a pretrial order. Judge McBryde continued to preside over the 1993 action during trial, and had been the presiding judge in the earlier SEC action. See Parker & Parsley Petroleum, 972 F.2d at 587 ("[T]he amount of judicial resources that the case has consumed is most important for our analysis as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently."). We have no doubt that Judge McBryde had become

intimately familiar with the merits of plaintiffs' claims at the time Field filed his motion to dismiss plaintiffs' state-law claims, thus demonstrating that further proceedings in the district court prevented redundancy and conserved scarce judicial resources.  See Batiste, 179 F.3d at 228.

The factors of convenience, comity, and fairness to the parties also favor the district court's decision to retain jurisdiction over plaintiffs' state-law claims.  The significant discovery that occurred in the 1993 action, including depositions of all plaintiffs, facilitated a shortened discovery schedule and an expedited trial date.  Plaintiffs had pursued their federal securities claims against Field in a timely manner in the 1993 action, and it was only after Field filed a bankruptcy petition and the district court ordered plaintiffs to either voluntarily dismiss their claims against Field or seek a lifting of the automatic stay that plaintiffs' federal claims became time-barred.  Furthermore, we note that the district court would have already resolved in the 1993 action any difficult state-law questions now arising from plaintiffs' state-law claims.  Cf. Parker & Parsley Petroleum, 972 F.3d at 589 (stating that principles of comity point toward dismissal because "[a]ll of the remaining legal issues of the case, of course, are of state law . . . [and] are difficult ones").  We therefore conclude that the factors of comity, convenience, and fairness to the parties point strongly toward our conclusion that the district court did

16

not abuse its discretion by retaining plaintiffs' state-law claims.

After considering and weighing all the factors present in this case, and relying especially on the amount of discovery that had already taken place and on our conclusion that the district court was intimately familiar with plaintiffs' claims, we thus conclude that the district court's retention of plaintiffs' state-law claims following Field's motion for summary judgment on plaintiffs' federal claims was within its discretion.  We therefore proceed to consider Field's contention that the district court erroneously denied him judgment as a matter of law because there is insufficient evidence supporting the jury's verdict that he committed common-law fraud.

## C. Sufficiency of the Evidence

A party is entitled to judgment as a matter of law only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the other] party on that issue." FED. R. CIV. P. 50(a).  "Judgment as a matter of law is proper only if[] 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . .'" Buford v. Howe, 10 F.3d 1184, 1187 (5th Cir. 1994) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).

We have carefully reviewed the record and agree with the district court's determination that there is sufficient evidence of Field's participation for the jury to find him liable for common-law fraud.  See Elliott v. Tilton, 89 F.3d 260, 264 (5th Cir. 1996) ("In general, "[a] person cannot be held liable for a fraudulent representation unless he made it himself or authorized another to make it for him or in some way participated therein . . . .") (quoting First Dallas Petroleum, Inc. v. Hawkins, 727 S.W.2d 640, 648 (Tex. App.--Dallas 1987, no writ)); Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 375 (Tex. 1984) ("A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment.").  Field testified that he supervised and controlled the business affairs of Tekna, and he stipulated that he assisted outside attorneys in preparing the prospectuses that contained fraudulent statements.  Furthermore, Field testified that he read and reviewed these prospectuses before they were distributed to plaintiffs.  We therefore affirm the district court's decision denying Field judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.