# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3323

_____

| | | |
|---|---|---|
| In re: Hoffinger Industries, Inc., | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | |
| Leesa Bunch, | * | |
| | * | |
| Creditor-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Hoffinger Industries, Inc., doing | * | |
| business as Doughboy Recreational | * | |
| Company, doing business as Lomart | * | |
| Industries, doing business as | * | |
| Environmental Products and Research, | * | |
| Inc., doing business as Prest Metals, | * | |
| doing business as Pools & Accessories | * | |
| Unlimited, INC. | * | |
| | * | |
| Debtor-Appellee. | * | |

_____

Submitted:  April 14, 2003

Filed:  June 2, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case involves the propriety of a bankruptcy court's[1] decision to annul the automatic stay of 11 U.S.C. § 362 in order to rehabilitate a notice of appeal filed in a state court by the debtor/debtor-in-possession, Hoffinger Industries, Inc. For the reasons expressed below, we affirm the district court's[2] decision that the bankruptcy court did not abuse its discretion in annulling the stay.

Hoffinger filed a petition under Chapter 11 of the United States Bankruptcy Code around a month after Leesa Bunch was awarded more than $13,000,000 from Hoffinger in a products liability suit in California state court. When the bankruptcy petition was filed, the provisions of § 362 went into effect, staying, as relevant here, the "continuation ... of a judicial ... proceeding against the debtor that was ... commenced before the commencement of the case under this title." *See* 11 U.S.C. § 362(a)(1). Approximately one month later, and despite the stay, Hoffinger filed a notice of appeal in the products liability suit in the California Court of Appeals, and the state appeal was pending when the bankruptcy court annulled the stay. (Ms. Bunch had filed a motion to dismiss the state appeal for lack of appellate jurisdiction, arguing that the notice of appeal was void since it was filed after the stay went into effect, but no ruling had yet been issued when the stay was annulled.)

I.

Ms. Bunch argues that the bankruptcy court lacked subject-matter jurisdiction over Hoffinger's motion for relief from the stay. For this contention, she relies first on the so-called *Rooker-Feldman* doctrine. Under this doctrine, lower federal courts,

---

[1]The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern District of Arkansas.

[2]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

including bankruptcy courts, do not have subject-matter jurisdiction over challenges to state court decisions in judicial proceedings, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *In re Ferren*, 203 F.3d 559, 559-560 (8th Cir. 2000) (per curiam), and thus a lower federal court has jurisdiction only over claims that are not " 'inextricably intertwined' with claims adjudicated in state court." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir. 1999) (quoting *Feldman*, 460 U.S. at 483 n.16).

The *Rooker-Feldman* doctrine, however, simply has no application to the instant case. Under *Rooker-Feldman*, "a state claim is inextricably intertwined if the federal challenge succeeds only to the extent that the state court wrongly decided the issues before it. That is, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811 (8th Cir. 1998) (internal citation omitted). Because a grant of retroactive relief by a bankruptcy court does not effectively reverse any state court ruling, *Rooker-Feldman* is beside the point. We similarly refuse Ms. Bunch's request to create an abstention doctrine to fit her case.

Ms. Bunch also asserts that the bankruptcy court had no jurisdiction to annul the stay because the deadline to file an appeal under relevant California law, as well as the sixty-day extension granted to debtors-in-possession under 11 U.S.C. § 108(b), had already passed before Hoffinger moved to annul the stay. Section 108(b) provides that

if applicable nonbankruptcy law ... fixes a period within which the debtor ... may file any pleading, demand, notice, ... or perform any other similar act, and such period has not expired before the date of the filing

of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –

> (1) the end of such period ... ; or
>
> (2) 60 days after the [petition has been filed].

*Id.*; 11 U.S.C. § 301. According to Ms. Bunch, § 108(b) provides a debtor-in-possession with a sixty-day window after the date that the bankruptcy petition is filed (assuming that the nonbankruptcy deadline has passed) to move for relief from the stay to rehabilitate a void notice of appeal. Because appellate deadlines to file a notice of appeal are jurisdictional, and both the California appellate deadline and sixty days since the filing of the petition had passed, Ms. Bunch's argument goes, the California Court of Appeals lost the potential to acquire jurisdiction over the appeal. Since the California appellate jurisdiction was lost, Ms. Bunch contends that the bankruptcy court lacked jurisdiction to annul the stay here.

This argument, however, suffers from several flaws, the first of which is that it does not go to the bankruptcy court's jurisdiction. The matter of jurisdiction has to do only with "the court's statutory or constitutional *power* to adjudicate the case,"*United States v. Cotton*, 535 U.S. 625, 630 (2002) (internal quotation omitted), which exists here pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(G) and 28 U.S.C. § 1334(a)-(b), and is completely independent of whether or not the state notice of appeal actually was timely or otherwise effective. That is to say, even if the California Court of Appeals would lack jurisdiction over the relevant appeal, and thus annulling the stay would be fruitless, the bankruptcy court would still have jurisdiction to determine whether or not to grant relief from the stay.

We believe that Ms. Bunch's argument is more appropriately directed to the bankruptcy court's legal authority to annul the stay once certain dates had passed and to the propriety of exercising that authority here. We reach these issues in turn.

## II.

Bankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. §362(d)(1) in order to rehabilitate stay violations. *See, e.g.*, *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994); *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992); *In re Vierkant*, 240 B.R. 317, 324 (B.A.P. 8th Cir. 1999). Here Hoffinger sought to rehabilitate a notice of appeal that it filed after petitioning for bankruptcy, believing that the notice might have been void because of the stay. Putting aside for the moment the question of whether there are circumstances present here that constituted sufficient "cause" to the annul the stay, it is clear to us that the bankruptcy court had the authority to do so if it believed such cause existed.

Ms. Bunch's argument to the contrary (described above) fails to recognize how different sections of the bankruptcy code work together to alter nonbankruptcy appellate deadlines that are relevant to certain actions stayed by § 362(a)(1). Contrary to Ms. Bunch's assertions, § 108(b) does not provide debtors with a sixty-day window to rehabilitate an otherwise void nonbankruptcy notice of appeal because it is not applicable in the present circumstances.

Because an appeal by a debtor-in-possession (on behalf of a debtor) in a case in which the debtor originally was the defendant is a " 'continuation' of a 'proceeding against the debtor,' " *see Farley v. Henson*, 2 F.3d 273, 275 (8th Cir. 1993), we believe that 11 U.S.C. § 108(c), and not § 108(b), applies. Section 108(c) provides that

> if applicable nonbankruptcy law ... fixes a period for ... continuing a
> civil action in a court other than a bankruptcy court on a claim against
> the debtor ... and such period has not expired before the date of the filing
> of the petition, then such period does not expire until the later of  –
> > (1) the end of such period ... ; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 ...

We note the obvious fit between the provisions in § 362(a)(1) regarding the application of the automatic stay to a "continuation" of a judicial "proceeding against the debtor" and the language in § 108(c) regarding the extension of applicable nonbankruptcy deadlines relevant to "continuing a civil action ... against the debtor" until after the stay has expired or is terminated. As one influential treatise explains:

> Thus, when the debtor has a deadline for filing an appeal prior to bankruptcy, if the action was originally brought against the debtor, the trustee [or debtor-in-possession] need not meet the 60 day limit of section 108(b) since the action would have been stayed by section 362. There is no need to file pleadings or other briefs in a proceeding which has been stayed; section 108(c) will be applicable if the stay terminates.

2 *Collier on Bankruptcy* ¶ 108.03[2], at 108-10 (15th ed. rev. 2003); *see id.*, ¶ 108.04[1], at 108-12 to 108-13; *cf., e.g.*, *Raley v. Lile*, 861 S.W.2d 102, 104 (Tex. Ct. App. 1993). *But see Production Credit Ass'n of Minot v. Burk*, 427 N.W.2d 108, 111 (N.D. 1988) (deeming § 108(b) applicable).

We of course recognize that certain appeals, such as those involving "criminal action[s]" or "a governmental unit's ... police and regulatory power," are not subject to the automatic stay in the first instance, *see* 11 U.S.C. § 362(b)(1),(4), and with those appeals § 108(b), and not § 108(c), may well provide the applicable time extension, *see* 2 *Collier* ¶ 108.03[2], 108-10. And we recognize that there are certain appeals which are stayed by another subsection of 11 U.S.C. § 362(a) but not § 362(a)(1), because the original proceeding was not considered to be "against the debtor," *see, e.g.*, *Roberts v. Commissioner*, 175 F.3d 889, 896 (11th Cir. 1999), and § 108(b) may apply in that situation as well, *see id.* at 898. But it is undisputed in this

case that under *Farley*, 2 F.3d at 275, the present appeal is stayed by § 362(a)(1) as a "continuation" of a "proceeding against the debtor."

For similar reasons, we reject Ms. Bunch's reliance on *Johnson v. First Nat'l Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012 (1984), for the proposition that, although the appeal is stayed, the period to file the notice of appeal is not suspended by the automatic stay. We held in *Johnson*, 719 F.2d at 276-78, that § 362(a) did not toll or extend a state statutory period of redemption because the "automatic transfer of property, following the expiration of a period of redemption [did not] constitute[] either an 'act' or 'proceeding,' ... within the meaning of § 362(a)." Since we believe that the filing of the notice of appeal in state court is one aspect of a continuation of a judicial "proceeding against a debtor," and thus stayed by § 362(a)(1), *see, e.g., Parker v. Bain*, 68 F.3d 1131, 1138 (9th Cir. 1995), we also believe that it is encompassed within the plain meaning of § 108(c), and therefore that the deadline to file the notice of appeal is extended by § 108(c)(2) until at least thirty days after notice of the stay's termination or expiration.

Finally, we reject Ms. Bunch's contention that § 108(c) provides time extensions only to creditors. Although we acknowledge that it is usually creditors who rely upon § 108(c), *see, e.g.*, *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989), and that the legislative history discusses § 108(c) as "extend[ing] the statute of limitations for creditors," *see* S. Rep. No. 95-989, at 30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816, we do not believe that application of the subsection turns on who seeks the extension. None of our cases involving § 108(c) has turned on who was seeking relief, and we think that such a distinction "would be impractical and unworkable." *See Farley*, 2 F.3d at 275. We thus decline to construe § 108(c) as extending time periods for creditors only.

## III.

Because of the additional time allowed by § 108(c)(2) to perform certain actions after the stay has been lifted, such as filing a notice of appeal, retroactive annulment of the stay to rehabilitate a void notice of appeal will seldom be necessary. But we recognize that circumstances may arise in which, for various reasons, granting retroactive relief may be appropriate, and this case, we believe, presents one such situation.

Although void because of the stay, Hoffinger's notice of appeal filed in October, 2001, was timely under California law. Around a month later, Hoffinger moved in the bankruptcy court for relief from the automatic stay prospectively to pursue available post-judgment motions and appeals in the California litigation, and the court granted the motion on December 27. Due to difficulties in the clerk's office of the bankruptcy court, however, the court's action was not entered on the docket until January 10, 2002. Hoffinger maintains, moreover, that it first received notification on January 29, an assertion that the bankruptcy court later "accepted ... as true."

On February 21, Ms. Bunch filed a motion to dismiss in the California Court of Appeals, arguing that because the bankruptcy court's relief from the stay was only prospective, the notice of appeal was still void. The next day, Hoffinger filed a second notice of appeal in the California case and then later filed a motion in the bankruptcy court requesting that it retroactively annul the stay in order to rehabilitate the first notice of appeal. After a hearing, the bankruptcy court granted this motion for retroactive relief on February 28.

The bankruptcy court believed that retroactive relief was appropriate because, among other reasons, the amount owed Ms. Bunch (which was, as we have said, over $13,000,000) was essential to the resolution of the bankruptcy case, and, had

Hoffinger moved to lift the stay before filing its first notice of appeal, there would have been no basis to deny the motion.

Ms. Bunch argues that it was inappropriate for the bankruptcy court to grant retroactive relief because she has lost her right to file a cross-appeal as a result. After Hoffinger filed its first notice of appeal, Ms. Bunch did not file a cross-appeal. She contends that she did not do so because, under California law, the twenty-day period to file a cross-appeal begins only after a valid notice of appeal has been filed; since she believed that the original notice of appeal was void because of the stay, she did not believe that she was able to file a cross-appeal. The bankruptcy court rejected this argument, on the ground that "nothing prevented Bunch from obtaining relief from the stay to pursue a cross-appeal in October when the Debtor filed its notice of appeal." The bankruptcy court further noted its belief that Ms. Bunch had not lost her right to file a cross-appeal, because of the time extensions provided by § 108(c).

At the outset, we note our belief that the second notice of appeal was timely even without the retroactive relief that the bankruptcy court granted because Hoffinger was not notified of its prospective relief from the stay until January 29 (a finding by the bankruptcy court that has never been challenged). Section 108(c)(2) extended the period to file a notice of appeal until thirty days after that date. Hoffinger's second notice of appeal, filed on February 22, came within that period.

Even if retroactive relief was unnecessary, we nevertheless conclude that the bankruptcy court appropriately granted it here. Having reviewed the transcript of the hearing prior to the grant of retroactive relief, it is readily apparent to us that there was a large amount of confusion over the status and timeliness of various filings, in large measure due to matters outside of Hoffinger's control. We think that retroactive relief was an appropriate way to extricate the various proceedings from the morass into which they had fallen and to set things going again.

-9-

We also note that although the first notice of appeal was filed in October, 2001, § 108(c)(2) would extend the period in which Ms. Bunch could file a cross-appeal to at least March 30, 2002, thirty days after the date of the annulment.[3] We therefore conclude that the bankruptcy court did not abuse its discretion in providing retroactive relief here.

## IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The prior grant of prospective relief terminated the stay only to the extent necessary to allow prospective motions. The stay remained otherwise in full effect until it was annulled on February 28.