IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-41340
_____


BETTAH BEACH PRODUCTIONS INC; ET AL

Plaintiffs


BETTAH BEACH PRODUCTIONS INC

Plaintiff - Appellee

v.

PARK BOARD OF TRUSTEES OF THE CITY OF GALVESTON; ET AL

Defendants


PARK BOARD OF TRUSTEES OF THE CITY OF GALVESTON

Defendant - Third Party Plaintiff – Appellee

v.

MCLEOD ALEXANDER POWEL & APFFEL

Defendant – Third Party Defendant – Appellant
_____

Appeal from the United States District Court
for the Southern District of Texas
(98-CV-619)
_____
January 16, 2003

Before KING, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit
Judges.

KING, Chief Judge:[*]

Defendant-Third Party Defendant-Appellant McLeod Alexander Powel & Apffel ("MAPA") appeals from the final judgment entered by the District Court for the Southern District of Texas awarding Defendant-Third Party Plaintiff-Appellee Park Board of Trustees of the City of Galveston ("Park Board") approximately $2 million as a result of malpractice committed by MAPA during its representation of the Park Board. MAPA also appeals the court's entry of sanctions against them for Rule 11 violations. Because we hold that the district court erroneously retained supplemental jurisdiction over this case after the federal claims had been dismissed, we vacate the district court's judgment and remand with instructions to dismiss the case. We also affirm the district court's award of Rule 11 sanctions against MAPA for filing frivolous post-trial motions.

## I. FACTS AND PROCEDURAL HISTORY

In 1994, the Park Board solicited proposals for private management of a section of the waterfront known as East Beach. Any party seeking management of East Beach would be required to comply with the regulations promulgated by the Texas General Land Office ("GLO"). The GLO's interpretation of the Texas Open

---

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Beaches Act ("TOBA") requires that any revenues received from beach user fees be applied solely to beach-related services.

Two local residents, George Childress and Allen Flores, and their company, Bettah Beach Productions, Inc. ("Bettah Beach"), showed interest in privately managing East Beach. Daniel Vaughn, the attorney for the Park Board and a partner in MAPA, advised Flores that he should contact the GLO for information about the permissible uses of parking and concession revenues. The GLO replied that whether Bettah Beach could profit from parking revenues was a matter for the Park Board. Bettah Beach and the Park Board ultimately reached a deal; the terms of the Concession Agreement which Vaughn drafted bound Bettah Beach to comply with "all applicable laws, rules and regulations regarding beach user fees."

During the term of the Agreement, questions arose concerning whether Bettah Beach's use of parking revenues complied with the TOBA. Before these questions were resolved, though, a barge owned by Buffalo Marine Services, Inc. ("Buffalo Marine") spilled oil onto East Beach in March 1996. Both Bettah Beach and the Park Board sought recovery from Buffalo Marine, and both were represented by MAPA attorneys after initial attempts at settlement failed. Whether or not this joint representation was fully disclosed and approved of is in dispute: MAPA claims that it explained the joint representation fully to both parties, while the Park Board claims that it had never been asked for and

3

had never given permission for joint representation with Bettah Beach against Buffalo Marine. In November 1997, Buffalo Marine, under the terms of a settlement, paid the Park Board $165,000 and Bettah Beach $235,000.

When the time came to renew the Concession Agreement, Bettah Beach assured the Park Board that it had been complying with all "applicable" rules and regulations. After renewing the Agreement, the Park Board met with the GLO to express its concerns that Bettah Beach was misappropriating beach fees. The GLO requested quarterly accountings and performed an audit. The audit revealed questions concerning both whether Bettah Beach properly allocated the proceeds from the Buffalo Marine litigation to beach user fees and whether the Park Board had exercised insufficient supervision over Bettah Beach as its subcontractor.

In December 1998, Bettah Beach sued the Park Board, arguing that the Board never said that Bettah Beach could not profit from its parking revenues. The Board counterclaimed that Bettah Beach fraudulently misrepresented that it would comply with applicable laws. The Park Board later filed a third-party complaint against MAPA, alleging that it had breached its fiduciary duty by its joint representation in the Buffalo Marine litigation.

In March 2000, the Park Board and Bettah Beach reached a settlement covering the claims between them. In May, MAPA moved to have the remainder of the case dismissed on the grounds that

federal subject matter jurisdiction no longer existed because all of the federal claims had been resolved as part of the settlement. The district court, in opting to retain supplemental jurisdiction over the remaining claims, wrote:

> From the beginning, this case has received copious press coverage. Understandably, the citizens of the City of Galveston are intensely interested in a suit involving elements of their local government, the management of a popular local beach, and the professional competence and integrity of a prominent local law firm. Consequently, the Court has determined that it would be inappropriate to prevent a full and public airing of the grievances between the parties by granting dispositive relief on hyper-technical grounds. A trial date has been set for January 22, 2001. All of these matters of legitimate public interest will be definitively adjudicated in the course of open trial.

In October 2000, the Park Board amended its complaint to include charges that Vaughn had negligently drafted the Concession Agreement and that he had failed to monitor Bettah Beach's use of the beach user revenues to ensure that they complied with the law. The case went to trial on August 20, 2001. On August 23, the jury reached its verdict. However, MAPA contends that, while the parties were waiting in the courtroom for the jury to return and announce the verdict, the two parties told the court that they had reached a binding settlement. The Park Board disagrees, saying that the settlement was not binding unless it was approved by a vote of the full Board. The district court refused to certify the settlement; the jury returned a verdict of $1.75 million against MAPA, finding that MAPA had both committed malpractice and breached their fiduciary duty to the

5

Park Board. The district court also added, as part of the final judgment, attorney's fees: a refund of the $52,854.21 paid by the Park Board to MAPA in the Buffalo Marine litigation, and $160,000 (an amount the parties had stipulated to) in attorney's fees expended by the Park Board in defending itself in the Bettah Beach suit.

On August 28, the full Park Board met to discuss the proposed settlement; the Board unanimously rejected it. Nevertheless, the next day MAPA filed a Notice of Settlement. The court rejected the settlement. MAPA then filed a request for an evidentiary hearing to discuss the settlement and created a Statement of Proceedings that sought to reconstruct the pre-verdict courtroom settlement discussions (which had not been transcribed for the record). MAPA also raised the settlement issue in its motion opposing the entry of the final judgment. At a hearing held to discuss the amount of bond MAPA should post while the judgment was pending on appeal, MAPA mentioned that it wanted a more complete hearing on the settlement issue; the court reiterated that it had ruled on the enforceability of the settlement. Two weeks later, MAPA again moved that the court recognize the settlement and tried to get admitted its Statement of Proceedings. The court refused and sanctioned MAPA and its

counsel in the amount of $2,500 "for the continued filing of frivolous pleadings."[1]

MAPA raises several issues on appeal: (1) the district court lacked supplemental jurisdiction over the case; (2) the Board failed to prove that MAPA's alleged malpractice proximately caused the damages; (3) the Board failed to prove damages to any degree of certainty; (4) the statute of limitations barred the action; (5) the district court made erroneous evidentiary rulings concerning proffered expert testimony; (6) the district court judge was openly biased in favor of the Park Board; (7) the award of attorney's fees was inappropriate; and (8) the refusal to enforce the settlement agreement and subsequent sanctioning of MAPA for pressing the point were erroneous.

## II.   SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

The district court denied MAPA's motion to dismiss the action on the grounds that the court, after the federal claims had been settled, no longer had supplemental jurisdiction over the remaining state law claims.  This court reviews a decision to retain supplemental jurisdiction over state law claims for abuse

---

[1]   MAPA filed a litany of other motions as well (all of which the Park Board responded to) that did not directly deal with the settlement.  Ultimately, the court filed an order denying all future motions, stating that, under "an absolute blizzard of filings on all sorts of extraneous matters before this Court," the parties should save their motions for the pending appeal.

of discretion.  McClelland v. Gronwaldt, 155 F.3d 507, 511 (5th Cir. 1998).

District courts have the discretion to exercise supplemental jurisdiction over claims that, while they have no independent basis for federal jurisdiction, are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a) (2000).  However, a district court may choose to decline that jurisdiction in certain circumstances; one of these is when "the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  In such a case, the "general rule is to decline to exercise jurisdiction over pendent state-law claims . . . [though] this rule is neither mandatory nor absolute."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999) (internal quotation and citation omitted).  In such a case, the district court should consider the factors of "judicial economy, convenience, fairness, and comity" when weighing whether to exercise pendent jurisdiction.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

The Park Board argues that the sheer volume of pleadings and motions that had come before the district court sufficiently implicates the notion of judicial economy to make supplemental jurisdiction appropriate.  However, at the time MAPA filed its motion to dismiss, most of the judicial resources had actually been expended on the underlying case between the Park Board and

8

Bettah Beach.  When MAPA moved to dismiss for lack of subject matter jurisdiction on May 9, 2000, the Park Board had yet to file its final amended complaint in the case and the actual trial was more than fifteen months away.[2]  See Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992) (dismissing supplemental jurisdiction because, at the point the motion was made, the parties were "not ready for trial").  The Parker court also noted that the fact that the moving party had, after the district court opted to retain supplemental jurisdiction, later filed an amended complaint tended to show that the litigation was in such an early stage that dismissal would have been appropriate.  Id.

The district court here made no mention of any of the factors that it was required by § 1367 and Carnegie Mellon to consider when deciding whether to retain supplemental jurisdiction over the pendent state law claims.  Instead, the district court claimed to be doing so out of a sense of the "intense public interest" of the citizens of Galveston in seeing the case reach a full and fair conclusion.  Whether or not public interest in the case was high, though, is irrelevant for purposes

_____

[2]  Of course, by now substantial judicial resources have been expended on this case, given that it has already gone through a trial.  However, the decision on whether the exercise of supplemental jurisdiction was appropriate must be made by looking at the circumstances at the time the party filed its motion to dismiss for lack of jurisdiction.  Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992).

9

of a district court's exercise of supplemental jurisdiction; a strong public interest does not implicate any of the four Carnegie-Mellon factors.  Further, the suggestion implicit in the district court's reason for retaining jurisdiction is that the strong public interest of the citizens of Galveston in seeing the case reach a full and fair conclusion could not be satisfied in state court (presumably also in Galveston).  That suggestion must be rejected.

In view of the fact that the district court's decision to exercise supplemental jurisdiction over the case did not address any of the Carnegie-Mellon factors and relied instead on yet another factor that was simply wrong, we find that the district court abused its discretion in retaining supplemental jurisdiction over this case.  Section 1367(c), as interpreted by Carnegie-Mellon, embodies specific factors that a district court must consider in choosing whether to exercise supplemental jurisdiction over pendent state law claims.  A district court errs if it fails to consider those factors.

### III. THE POST-TRIAL SANCTIONING OF MAPA

While our holding that the district court abused its discretion by retaining supplemental jurisdiction over this case also disposes of the majority of MAPA's remaining claims on appeal, we must still address MAPA's claim that the district

10

court erred in sanctioning them $2,500 for their post-trial actions.

All aspects of Rule 11 sanctions are reviewed for abuse of discretion. Merriman v. Sec. Ins. Co. of Hartford, 100 F.3d 1187, 1191 (5th Cir. 1996). "A district court necessarily abuses its discretion in imposing sanctions if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." Elliott v. Tilton, 64 F.3d 213, 215 (5th Cir. 1995). However, a district court's discretion in this area is generally very broad. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990) ("Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11.").

The district court, in sanctioning MAPA, stated:

> Plaintiff also sought sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Court, finds that, at this time, sanctions are appropriate. It is, therefore, ordered that Defendant and its counsel be sanctioned for the continued filing of frivolous pleadings, and the Court deems that the appropriate sanction for the filing of such Motion and for its continuing pattern of conduct in that regard, is $2,500.00.

Sanctions may be assessed against a party for filing excessive or frivolous motions. Sheets v. Yamaha Motors Corp., 891 F.2d 533, 538 (5th Cir. 1990). Thus, the district court's determination that MAPA's continued filing of post-trial motions was "frivolous" forms an appropriate basis for sanctions.

11

The district court expressly identified MAPA's "continuing pattern of" filing frivolous post-trial motions as the basis for its decision to impose sanctions. After the full Park Board rejected the pre-verdict settlement, MAPA filed a notice of settlement which the court rejected. Had MAPA stopped there, sanctions would have been inappropriate; in fact, at that time the court denied the Park Board's motion for sanctions, finding that MAPA had pursued the settlement in good faith. However, after the court rejected the settlement MAPA moved for an evidentiary hearing, attempted to file a Statement of Proceedings, and partially reargued the merits of the settlement in its motion opposing the entry of a final judgment. MAPA then brought the issue up again at the bond hearing, where the court expressly stated that it had ruled on the issue. Nevertheless, MAPA again filed notice to settle and to have the Statement of Proceedings made part of the record. Given the repeated attempts to press the same point, even after the court had specifically told MAPA that the settlement issue had been decided, the court did not abuse its discretion in sanctioning MAPA for continuing to beat a dead horse.

## IV. CONCLUSION

We VACATE the district court's judgment and REMAND with instructions to dismiss the case. We AFFIRM the district court's

12

award of sanctions again MAPA for filing frivolous post-trial motions.  Each party shall bear its own costs.