Hiep DO, et al, Plaintiffs

v.

PILGRIM'S PRIDE CORPORATION
et al, Defendants.

No. CIV.A.9:05CV238(TH).

United States District Court,
E.D. Texas,
Lufkin Division.

Aug. 10, 2007.

Gregory J. Finney, The O'Quinn Law Firm, Houston, TX, Wayne D. Haglund, Attorney at Law, Lufkin, TX, Charles E Soechting, The O'Quinn Law Firm, Stephen Rolfe Walker, The O'Quinn Law Firm, Houston, TX, for Plaintiffs.

Clayton Edward Bailey, Baker & McKenzie—Dallas, Alexander Max Douglas Brauer, Baker & McKenzie—Dallas, Dallas, TX, Joe Dodson Clayton, Joe D. Clayton, Tyler, TX, C. Victor Haley, Fairchild Price Thomas & Haley—Nacogdoches, Nacogdoches, TX, Lan Tuyet Nguyen, Shortt & Nguyen PC, Houston, TX, James Stephen Roper, Zeleskey Cornelius Hallmark Roper & Hicks, Lufkin, TX, Bryan Ward Schoeppey, The Law Offices of Bryan Schoeppey, Mena, TX, for Defendants.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT

HEARTFIELD, District Judge.

Before the Court are the Defendants respective motions for summary judgment [Docs. Nos. 169, 182, 188 & 190]. Having considered the motions, the responsive pleadings, the summary judgment evidence and arguments of counsel, this Court is of the opinion that summary judgment is appropriate and Plaintiff's RICO claims should be dismissed.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs lived in Georgia and raised chickens. After seeing an advertisement promoting the sale of a chicken farm in Timpson, Texas, Plaintiffs moved to Texas to purchase the farm, which was called "Timberlake Farm." The Truong Defendants owned the farm at that time. Pilgrim's Pride Corporation was the poultry processor who had contracted with the Truongs to supply the farm with the chick-

ens and other materials necessary for raising chickens. Plaintiffs state that without the contracts with Pilgrim's Pride the farm would be worthless. According to Plaintiffs, in order to keep the contracts, Pilgrim's Pride insisted that the prospective buyer work exclusively with Farmers State Bank to arrange financing and appraising. William Brimhall was the appraiser that Pilgrim's Pride and Farmers State Bank allegedly required Plaintiffs to use.

Plaintiffs state that each of these entities and individuals made misrepresentations to convince the Plaintiffs to buy the farm at an inflated price. Based upon these representations, on September 1, 2004, Plaintiffs entered into a contract requiring a $336,500 down payment and a mortgage of $1,220,000. After signing the contract, Plaintiffs allege that Pilgrim's Pride told Plaintiffs to make a multitude of capital improvements or it would cancel the contracts. After a series of improvements were made (around $100,000 was spent by the Dos), Pilgrim's Pride cancelled some of the contracts on October 13, 2004 and all of the contracts on January 14, 2005. Once the contracts were cancelled, Plaintiffs could not make their mortgage payments, and on November 1, 2005 Farmers State Bank foreclosed on the property at a substantially reduced price. Based on these events, Plaintiffs alleged the following scheme:

(1) Advertise farm with promises of long term contracts by Pilgrim's Pride. Require the buyer to use specific bankers and appraisers who will confirm a grossly inflated price for the property;

(2) Reward the Bankers and Appraisers with a steady stream of farmers selling and buying Pilgrim's Pride farms—they will get appraisal costs, and closing costs;

(3) Arbitrarily demand and extract capital improvements from the farmers until you get all you can out of them;

(4) Terminate the contract with the farmer, rendering the farm worthless;

(5) Once the farmer is in this position, give him the option to participate in the scheme (allegedly what the Truongs did) or foreclose on the house at a lower price; and

(6) Return to step one.

*See* Pls. RICO Case Statement [Doc. No. 22] p. 6.

■ Plaintiffs sued under the Racketeering Influence and Corrupt Organization Act, 18 U.S.C. § 1961 et seq. ("RICO"), alleging that Defendants Pilgrim's Pride and Farmer's State Bank violated 18 U.S.C. § 1962(c), and that Farmers State Bank, the Truong Defendants, and Brimhall violated 18 U.S.C. § 1962(d).[1] Under both subsections, RICO Claims require "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct or control of an enterprise." *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993). Each defendant filed no-evidence and traditional summary judgment motions seeking to dismiss Plaintiff's RICO claims. On July 5, 2007, the Court conducted an oral hearing on these motions.

## II. STANDARD OF REVIEW

Summary judgment is proper when, after viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judg-

---

1. Under 18 U.S.C. § 1962(c), it is unlawful for a person employed by or associated with an enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity. Under 18 U.S.C. § 1962(d), it is unlawful for a person to conspire to violate Sections 1962(a)—(c).

ment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); FED. R. CIV. P. 56(c). If the moving party establishes the absence of any genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Conclusory allegations, unsubstantiated assertions, and mere scintillas of evidence do not satisfy this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc). Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.*

Fed.R.Civ.P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. But the court is not going to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir.1996). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992).

### III.  RICO ANALYSIS

RICO analysis generally breaks the statute into three broad elements requiring (1) a RICO person, (2) a pattern of racketeering activity, and (3) an enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988). The RICO enterprise is the vehicle through which the alleged racketeering occurred, and lies at the heart of the RICO offense. *U.S. v. Neapolitan*, 791 F.2d 489, 500 (7th Cir.1986). An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct. *U.S. v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). An enterprise may be either a legal entity or a group of individuals associated in fact. 18 U.S.C. § 1961(4). To allege an association-in-fact enterprise, Plaintiffs must adduce evidence demonstrating " 'an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuous unit.' " *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (5th Cir.1987) (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528). The enterprise does not merely arise from the pattern of racketeering activity, rather it must exist separate and apart from that pattern in which it engages. *Id.* Under RICO, "an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts. Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself." *U.S. v. Bledsoe*, 674 F.2d 647, 664 (8th Cir.1982).

In order to control the scope of RICO, the concept of continuity has been incorporated into a RICO enterprise. "An

enterprise that 'briefly flourished and faded' will not suffice; [Plaintiffs] must adduce evidence showing that the enterprise functioned as a continuing unit." *Whelan v. Winchester Production Co.*, 319 F.3d 225, 230 (5th Cir.2003) (quoting *Landry v. Air Line Pilots Ass'n Int'l, AFL–CIO*, 901 F.2d 404, 433 (5th Cir.1990)). The continuity requirement extends not only to the purpose of the enterprise, but also its structure. *Shaffer v. Williams*, 794 F.2d 1030, 1032 (5th Cir.1986). While the structure of the enterprise may be fluid, "the enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did." *Marriot Bros. v. Gage*, 704 F.Supp. 731, 742 (N.D.Tex.1988).

Plaintiffs allege that the Defendants, collectively, comprise an association-in-fact enterprise, with the ultimate goal being the creation and consolidation of Pilgrim's Pride's control over its poultry farmers, resulting in Pilgrim's Pride's de facto ownership of the farms. An association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering; (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir.1995).

Pilgrim's Pride has over 1,000 contract broiler, breeder and pullet growers in the state of Texas alone. Farmers State Bank finances 74 of those growers, and none in any other state in the country. Brimhall has provided appraisal services for Farmers State Bank on 80 occasions. Brimhall also has provided appraisals for over 100 farms for which Pilgrim's Pride happened to be the integrator. Plaintiffs allege that these interactions constitute a hierarchical enterprise with Pilgrim's Pride at the top, controlling the actions of the bank and the appraiser. However, the evidence simply does not support the notion that these entities operate as a cohesive unit.

As far as Farmers State Bank and Brimhall were concerned, the sale of Timberlake Farm was no different than any other real estate transaction. Farmers State Bank finances poultry farms throughout East Texas, but finances only a fraction of Pilgrim's Pride's growers. Of all the poultry farms financed by Farmers State Bank, Pilgrim's Pride is the integrator for less than half. There is no sufficient evidence that the Dos were required by Pilgrim's Pride or any other party to finance the purchase of their farm through Farmers State Bank. Brimhall was contacted by Farmers State Bank to provide the appraisal of Timberlake Farm, and testified that he has never had a direct business relationship with, or been directly compensated by, Pilgrim's Pride. Exhibit F to Def. Pilgrim's Pride's Mot. Summ. J. The connection between Brimhall and Pilgrim's Pride is remote at best, and seems to arise only as the incidental crossing of paths of two companies who operate in overlapping fields in the same geographical area. Brimhall's alleged involvement in the enterprise was to provide a grossly inflated appraisal of Timberlake Farm. However, Plaintiffs produce no expert evidence or other competent summary judgment evidence that indicates the appraisal of Timberlake Farms was grossly inflated. There is no evidence that Brimhall failed to comply with industry standards in conducting the appraisal of the farm. There is insufficient evidence that Brimhall acted at the behest of Pilgrim's Pride as a member or subordinate in a hierarchical enterprise.

Over the last ten years, Farmers State Bank foreclosed on only seven chicken farms it financed, including Timberlake Farm. Indeed, a practice of luring buyers to purchase mortgages that they are fore-

seeably unable to maintain would be a ludicrous banking policy. Foreclosing on chicken farms cost Farmers State Bank an aggregate $1.7 million. When Pilgrim's Pride cancelled the Do's contract, Luke Motley, the president of Farmers State Bank wrote to Pilgrim's Pride's Chairman of the Board, Bo Pilgrim, expressing his concerns about viability of Timberlake Farm. *See* Exhibits B & C to Def. Farmers State Bank' Mot. Summ. J. This was not an action designed to save the Dos, but merely the rational step to protect Farmers State Bank's investment. The bulk of Timberlake Farm's value resided with its poultry contract. Once the contract was cancelled, the Plaintiffs had no way to make their annual mortgage payments. By cancelling the Do's contract, Pilgrim's Pride caused Farmers State Bank to suffer a near $600,000 loss.

The evidence demonstrating the cooperation and relationship between Pilgrim's Pride and Farmers State Bank reveals only standard business arrangements. Plaintiffs argue that letters regarding the cash flow of improved farms and meetings between the two companies regarding the future of Timberlake Farms indicate a cohesive decision making structure. Exhibit 7 of Exhibit T, Exhibits 22, 23 of Exhibit W to Pl.'s Resp. However, these communications also highlight the divergence between Farmers State Bank and Pilgrim's Pride's interests. Before the sale was made, Farmers State Bank's focus was the profitability of the Dos' relationship with Pilgrim's Pride. After Pilgrim's Pride cancelled the contract and took over poultry operations, Farmers State Bank was seeking only to recoup the losses threatened by the foreclosure of the farm. Its only interest was getting repaid for the loan. The actions of Farmers State Bank before the sale of the farm to the Dos, throughout the Dos' all-too-brief management of the farm, and the subsequent foreclosure, are not the actions of a member in an enterprise designed to dupe the Dos into falling into Pilgrim's Pride's trap. Rather, the evidence shows only that Farmers State Bank made a large loan after conducting due diligence, and then sought to protect the loan's repayment when poultry production at the farm was terminated.

What this case boils down to is a protest against the onerous control Pilgrim's Pride wields over its contract farmers, which often leaves those farmers, like the Dos, twisting in the wind, forced to comply with Pilgrim's Pride's demands or lose the most valuable aspect of their investments, their efforts, and their life's work. The degree of inequity in the relationship entered into between Pilgrim's Pride and its farmers is staggering, and in this case resulted in financial disaster. However, the unfortunate events suffered by the Dos were not the product of a continuous RICO enterprise.

A RICO enterprise must have a continuity of structure and a purpose shared by each member. *Shaffer v. Williams*, 794 F.2d 1030, 1032 (5th Cir. 1986). The Does have not met their summary judgment burden to raise a genuine issue of material fact that Pilgrim's Pride, Farmers State Bank, and Brimhall acted together as a continuous unit with a shared purpose. In the context of Timberlake Farm, the interests of Pilgrim's Pride and Farmers State Bank ultimately collided. No sufficient evidence demonstrates that Brimhall was cognizant of the alleged enterprise's purpose, or provided an inflated appraisal of Timberlake Farm in furtherance of that purpose. The Troung defendants appear in the saga once, and exit without a replacement within the alleged structure. There is no evidence that these disparate entities all acted with the shared purpose of consolidating Pilgrim's Pride control over its farmers. While

membership in a RICO enterprise may be fluid, there simply is not sufficient evidence indicating a membership structure with a common purpose that permeated every underlying act. The Dos have not carried their burden to produce evidence of the continuity needed to support this RICO enterprise. Summary judgment on their RICO claims is appropriate.

## IV. SUPPLEMENTAL JURISDICTION

Plaintiffs' RICO claims conferred federal jurisdiction over this suit. Having decided that Defendants are entitled to judgment as a matter of law on those claims, only state causes of action remain. The Fifth Circuit discourages maintaining the exercise of federal jurisdiction over state claims that are pendant to an eliminated federal claim. *See Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir.1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). Accordingly, the Dos' state claims will be dismissed without prejudice to re-filing.

## V. CONCLUSION

Having considered the motions, the responsive pleadings, the facts in evidence, the arguments of counsel and the applicable law, this Court of the opinion that no genuine issue of material fact supports the enterprise element of Plaintiffs' RICO claims. Accordingly, summary judgment is appropriate, and the RICO claims will be dismissed. The Court further declines to exercise supplemental jurisdiction over Plaintiffs' pendant state claims, and will dismiss them without prejudice.

**IT IS THEREFORE ORDERED** that Defendant Pilgrim's Pride's *Motion to Strike Plaintiffs' Summary Judgment Response Evidence* [Doc. No. 214] and *Motion to Strike Evidence Attached to Sur-Reply in Opposition to Defendants' Mo-*

*tion for Summary Judgment* [Doc. No. 229] are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment [Docs. Nos. 169, 182, 188 & 190] are **GRANTED** and Plaintiffs' RICO claims are **DISMISSED WITH PREJUDICE.** A final judgment on these claims will be entered separately in accordance with Fed. R.Civ.P. 58.

**IT IS FURTHER ORDERED** that all non-RICO state claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**